IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-02374-PSF

CLIFF MAHAN,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

## ORDER ON SOCIAL SECURITY APPEAL

This matter is before the Court on Plaintiff's Opening Brief (Dkt. # 12), seeking judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The Court having reviewed the submissions of counsel and the Administrative Record ("AR") now enters the following Order.

**I. BACKGROUND**

Plaintiff Cliff Mahan appeals from the decision of the Commissioner denying disability insurance benefits. The Commissioner's decision became final on September 22, 2005 when the Appeals Council found no reason to review the Administrative Law Judge's ("ALJ") decision of May 5, 2005. AR 4. Plaintiff timely filed his appeal in this Court on November 23, 2005 (Dkt. # 1). The Social Security Administrative Record was filed on March 6, 2006 (Dkt. # 5). The Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Mr. Mahan filed his claim for benefits on January 5, 2004, claiming an onset date of September 26, 2003. AR 34-36. In his Disability Report, Mr. Mahan explained that he has back problems, gout, depression and asthma and he is unable to stand, walk or sit for any period of time without pain. AR 42. He claims he stopped working on October 17, 2003 due to "severe pain in any activity." *Id.* Mr. Mahan was born on June 5, 1967, making him 36 years old at the date of onset. AR 34, 192.

**A. Medical Record**

The medical records show that Mr. Mahan has received treatment from Dr. Donald Hoisington in 2002 for gout, hemorrhoids, depression and a back injury, among other things. *See* AR 100-08. During the relevant period, the medical records show that Mr. Mahan visited Dr. Lawrence Stelmach on October 6, 2003 for an injury to his back from a slip and fall three days earlier. AR 90. Dr. Stelmach noted that plaintiff had a history of back injury, and that plaintiff weighed 352 pounds. Dr. Stelmach assessed low back pain and prescribed medication and ice pack treatment. *Id*.

Mr. Mahan was examined by Dr. Hoisington a few days later, on October 14, 2003, still complaining of lower back pain. AR 84. Dr. Hoisington found that Mr. Mahan had tenderness in the "L" sacroiliac area, sensation was intact, the test of Mr. Mahan's straight leg raise was negative and no gross deformity was observed. Dr. Hoisington diagnosed back strain and prescribed medication and alternating hot and cold treatment. *Id.* An x-ray of plaintiff's lumbar spine taken October 28, 2003 was normal. AR 85, 113. Dr. Hoisington signed a note on October 31, 2003, stating that plaintiff could not work for the next two weeks. AR 139.

Notes from a December 4, 2003 visit to St. Mary's Hospital's Marillac Clinic indicate that Mr. Mahan had limited flexibility and extension due to his back pain. AR 138.  Dr. Douglas C. Shenk, who evaluated plaintiff that day, diagnosed "significant decreased range of motion and pattern of increasing stiffness" and noted that he expected Mr. Mahan to be unable to work for at least two months.  AR 137.  At a follow-up with Dr. Shenk on December 24, 2003, Dr. Shenk assessed persistent back pain and suggested Mr. Mahan obtain an orthopedic consultation.  AR 136.

One month later, on January 21, 2004, plaintiff again visited Dr. Shenk, complaining of back pain and displaying elevated uric acid after testing.  Dr. Shenk assessed a possible "gouty process" and prescribed medication.  AR 135.  However, on February 5, 2004, Dr. Shenk noted that plaintiff's uric acid level was still elevated, but that he was not taking all of his medication.  AR 133.  Dr. Shenk also noted that Mr. Mahan "continues to struggle with his back pain" and assessed injury to the sacroiliac joints.  *Id.*  He referred Mr. Mahan for a CT scan, as the patient was too large for the MRI machine.  AR 132.  A CT scan on February 9, 2004 showed early degenerative changes to Mr. Mahan's lumbar spine, but no fractures or deformity. AR 126.

On March 3, 2004, Mr. Mahan went to Dr. Dale E. Bowen for a psychological examination in connection with his application for disability benefits.  AR 140. Dr. Bowen looked at plaintiff's social history and conducted a mental status exam and a clinical interview.  AR 140-43.  Dr. Bowen described Mr. Mahan as "morbidly obese" and evidencing "no emotional distress."  AR 141.  Dr. Bowen found that plaintiff's

"primary disability appears to be based on physical problems rather than psychological" and assigned him a Global Assessment of Functioning ("GAF") of 75. He determined that plaintiff appeared to have good memory skills, excellent ability to sustain concentration, adequate social interaction skills, and adequate ability to adapt to typical work-related stressors. AR 142-43.

A state agency medical consultant, Dr. Alan Ketelhohn, assessed Mr. Mahan's physical residual functional capacity on March 15, 2004 at the request of the Commissioner. AR 144-52. Dr. Ketelhohn apparently did not examine Mr. Mahan, but reviewed his records. *See* Def.'s Resp. Br. at 7. Dr. Ketelhohn concluded that Mr. Mahan could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and could push and/or pull (including operation of hand and/or foot controls) without limitation. AR 145. Dr. Ketelhohn also found that Mr. Mahan could frequently climb, balance, kneel, crouch or crawl but could only occasionally stoop. AR 147.

A state agency psychiatrist, Dr. Donald Glasco, reviewed Mr. Mahan's medical evidence and assessed his mental residual functional capacity on March 18, 2004. AR 153-65. Dr. Glasco determined that plaintiff had no restriction of daily living activities, no difficulties in maintaining social functioning or in maintaining concentration, persistence or pace, and no episodes of decompensation.[1] AR 163.

---

[1] Decompensation has been defined as "loss of physiological compensation or psychological balance; especially: inability of the heart to maintain adequate circulation." Medline Plus Medical Dictionary, http://www2.merriam-webster.com/cgibin/mwmednim?book=Medical&va=decompensation.

On December 17, 2004, plaintiff was seen by Gary Sanders, an occupational therapist, who performed a functional capacity evaluation.  Testing showed among other things that Mr. Mahan could sit for 30 minutes to one hour at a time and for four to five hours in an eight-hour day; stand for 10 minutes to one hour at a time and for one to two hours in an eight-hour day; lift 10 pounds from the floor infrequently, 20 pounds from the waist infrequently, and 15 pounds overhead occasionally; and never bend, stoop, kneel, crouch, squat or crawl.  AR 168.  Mr. Sanders noted that plaintiff's "present level of work capacity falls within the sedentary to light range.  He seems most suited for sedentary work. . . .  He is obviously obese and in poor physical condition."  AR 169.  Mr. Sanders recommended that "[i]f Mr. Mahan is to seek employment and/or training likely in computer related work it appears he would benefit from a good adjustable heavy duty task chair.  He would need arm rests to help with transitional movements to and from sitting."  *Id.*

### B.  The ALJ's Decision

At the March 11, 2005 hearing, Mr. Mahan proceeded without counsel.  AR 16.  A Vocational Expert ("VE"), Robert Van Iderstine, testified at the request of the ALJ.  The ALJ issued a decision denying benefits on May 5, 2005.

In his written decision, the ALJ denied Mr. Mahan's application for benefits at step four of the five-step sequential evaluation process.  AR 20.  In reaching this determination, the ALJ first determined that Mr. Mahan has not engaged in substantial gainful activity since September 26, 2003, the alleged date of onset.  AR 17.  He next found that Mr. Mahan's degenerative disk disease of the lumbar spine and obesity are

severe impairments.  *Id.*  The ALJ determined that plaintiff's gout, asthma, depression and left knee problems did not cause significant and ongoing functional limitations and were thus not severe impairments.  AR 17-18.  In comparing Mr. Mahan's severe impairments to the listed impairments of Appendix 1 of the Social Security Regulations, the ALJ found that none matched the criteria of any listed impairment.  AR 18.

Turning to Mr. Mahan's residual functional capacity ("RFC"), the ALJ determined that Mr. Mahan can perform a full range of sedentary exertional work, which involves "lifting no more than 10 pounds at a time, standing and walking occasionally, and sitting the remainder of the time."  AR 19.  This determination was made after considering Mr. Mahan's alleged pain and other symptoms; his activities of daily living; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate pain or other symptoms; treatment other than medication for relief of pain or other symptoms; and any other factors concerning functional limitations and restrictions.  *Id.*

The ALJ found that Dr. Ketelhohn's RFC was "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.  However, in giving the claimant the maximum benefit of the doubt, the [ALJ found] that he has greater limitations."  *Id.*  He also gave no weight to Mr. Mahan's complaints of pain and impairment, as plaintiff's description of his daily activities "support that the claimant could perform some physical and mental work-related activities."  *Id.*

6

Based on his RFC finding and the testimony of the VE, the ALJ determined that Mr. Mahan is not prevented from performing his past relevant work as a customer service/computer support technician. AR 20. Therefore, he found Mr. Mahan not disabled within the meaning of the Social Security Act. *Id.*

## II.  PLAINTIFF'S APPEAL

Mr. Mahan first alleges that the ALJ erred at step two when he found that plaintiff's gout was not a severe impairment. Pl.'s Op. Br. at 4. Mr. Mahan also contends that the ALJ erred at step four in determining his RFC. *Id.* at 4-5. Specifically, he claims that the ALJ "improperly discounted or did not even consider relevant information regarding the Plaintiff's residual functional capacity and therefore improperly determined his residual functional capacity." *Id.* at 5. In support of this argument, Mr. Mahan notes that the formal functional capacity evaluation by Mr. Sanders, the occupational therapist, was not specifically considered. *Id.* at 6. Moreover, the ALJ's decision failed to "contain a step by step analysis of the Plaintiff's residual functional capacity." *Id.*

## III.  STANDARD OF REVIEW

When a court reviews the Commissioner of Social Security's decision to deny social security benefits, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). The court's job is to decide whether substantial evidence in the record supports the Commissioner's factual findings as a whole and whether the Commissioner applied

the correct legal standards.  *Id.*; *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).

Substantial evidence is defined as more than a scintilla, but less than a preponderance; is it such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See, e.g., Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996); *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989).  Put another way, if other evidence in the record overwhelms the Commissioner's determination, or if only a mere scintilla of evidence supports the decision, it is not based on substantial evidence.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  The Commissioner's decision may also be reversed for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)).

## IV.  ANALYSIS

### A.  Gout as a Severe Impairment

Mr. Mahan's first asserted error is that the ALJ erred by not considering gout to be a severe impairment.  At step two, a claimant has the burden to "demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity."  *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing 20 C.F.R. § 404.1520(c)).  Although step two requires only a "de minimis" showing of impairment, *id.*, "the claimant must show more than the mere presence of a condition or ailment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

Here, Mr. Mahan testified that he is taking medication for his gout. AR 197. He testified that he endures a gout attack "once a month, once every other month" and that they last "three or four days at the most. When the attack comes on, I increase my medicine and they come and they're in control." AR 198. Such testimony does not support a finding that the gout "significantly limits the claimant's ability to do basic work activity." *Hawkins*, 113 F.3d at 1169. Rather, the ALJ's finding that "the medical evidence fails to establish that [the gout] cause[s] significant and ongoing functional limitations" (AR 18) is supported by substantial evidence in the record and is not reversible error.

### B.  Consideration of the Occupational Therapist's Report

Plaintiff claims the ALJ improperly determined his RFC first by failing to consider the report by Mr. Sanders, an occupational therapist. Under Social Security Ruling 96-8p, an RFC assessment must be based on all of the relevant evidence in the case record. However, although the ALJ must consider all relevant evidence, he is not required to discuss every piece of it. *See e.g. Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Moreover, although the ALJ is required to evaluate all medical opinions, he *may* also evaluate other sources. *See* 20 C.F.R. §§ 404.1513(d), 404.1527(d). Thus, evaluation of "other sources" is permissive, not mandatory. *Crawford v. Massanari*, 2001 WL 1943879 at *2 (N.D. Okla., Aug. 24, 2001), *aff'd*, 44 Fed. Appx. 385 (10th Cir., Aug. 13, 2002) ("The ALJ must not reject opinions from medical sources without giving specific reasons, whereas he may reject the opinions of 'other sources' without explanation."); *see also Gatts v. Barnhart*, 2004 WL 723492 at

9

*7 (D. Kan., Mar. 25, 2004) (citing *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that the ALJ did not have to rely on a physical therapist's opinion because such an opinion was entitled to less weight than medical opinions)).  An occupational therapist is not an acceptable source for a medical opinion, 20 C.F.R. § 404.1513(a), but does qualify as an "other source."  20 C.F.R. § 404.1513(d)(1).  Accordingly, the ALJ was not required to rely on or discuss the opinion of Mr. Sanders, the occupational therapist here.  Thus, the ALJ's failure to do so does not provide a basis for reversal or remand.

### C. Function-by-Function RFC Determination

Finally, Mr. Mahan argues that the ALJ's RFC determination "does not abide by the standards of the Tenth Circuit that the decision contain a step by step analysis of the Plaintiff's residual functional capacity."  Pl.'s Op. Br. at 6.  Plaintiff is correct that an ALJ's RFC assessment at step four "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p; *see also Baker v. Barnhart*, 84 Fed. Appx. 10, *13 (10th Cir. 2003) (requiring ALJ to identify abilities on a function-by-function basis at step four).  Here, the ALJ did not make the required function-by-function determination before deeming plaintiff able to complete the full range of sedentary work, and the Court must remand for such a determination. *See Southard v. Barnhart*, 72 Fed. Appx. 781, 785 (10th Cir. 2003) ("Because the ALJ failed to make all the detailed findings required by the regulations

and rulings at step four, his RFC conclusions are not supported by substantial evidence."); *Hodgson v. Apfel*, 172 F.3d 62, *4 (10th Cir., Feb. 3, 1999) (Table) (remanding where ALJ failed to make function-by-function analysis, reasoning that without the required underlying findings, no meaningful evaluation of the ALJ's decision could take place).

Remand on this issue is especially appropriate here, where it is unclear whether the ALJ properly considered Mr. Mahan's obesity in determining his RFC. Social Security Ruling 02-1p recognizes that "[o]besity can cause limitation of function," and that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." Therefore, the ALJ must assess the effects of claimant's obesity in conjunction with his back problem and "explain how [h]e reached [his] conclusions on whether obesity caused any physical or mental limitations." *Id.*; *see also Baker*, 84 Fed. Appx. at *14 (instructing ALJ on remand to revisit issue of claimant's obesity in light of SSR 02-1p when determining claimant's RFC).

Although here the ALJ was certainly aware of plaintiff's obesity, the ALJ failed to go through the required evaluative steps in determining plaintiff's RFC and thus the Court cannot properly review whether the obesity, along with the other claimed limitations on plaintiff's functionality, was properly considered on the required function-by-function basis. Such a limitation on the Court's ability to properly review the decision is a proper basis for remand, and does not elevate form over substance in this situation. Rather, this Court cannot engage in any meaningful review here, where it is not clear whether Mr. Mahan's obesity affected specific functioning, such as the ability

to sit for more than 30 minutes at a time or requiring a sit/stand option, as Mr. Mahan claims. *See Hodgson*, 172 F.3d 62 at *4 (inability to review the ALJ's decision–where the ALJ failed to make function-by-function analysis–justified remand).

The Commissioner argues that "the ALJ's lack of specific discussion of the functional capacity evaluation was, at most, harmless error." Def.'s Resp. Br. at 17. The Commissioner contends that "even with the limitations outlined in [Mr. Saunder's functional capacity] evaluation, Plaintiff would be able to perform his past relevant work." *Id.* However, this Court cannot say what the ALJ might have determined to be the appropriate limitations are, or whether he would have adopted the limitations of the Saunders evaluation, if a function-by-function analysis in conjunction with a specific assessment of plaintiff's obesity on his functioning had occurred. Such fact-finding is solely the province of the ALJ. *Cf. White*, 287 F.3d at 905 (a court reviewing a decision to deny benefits may not reweigh the evidence or substitute its judgment for that of the Commissioner); *see also Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (whether or not decision is supported by substantial evidence is not appropriate inquiry where incorrect legal standards applied; such a situation is grounds for reversal). Moreover, the Commissioner does not point to any caselaw finding harmless error in such circumstances. Rather, caselaw cited above clearly dictates remand in this situation where the ALJ failed to properly assess plaintiff's RFC as dictated by SSR 96-8p and where this Court cannot review whether the ALJ properly evaluated plaintiff's obesity as dictated by SSR 02-1p.

## V.  CONCLUSION

For the reasons set forth above, the Court ORDERS the case REMANDED to the Commissioner of Social Security for further proceedings as to the plaintiff's RFC determination.

DATED:  December 14, 2006                    BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge